# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| SERRINA JACKSON,<br><br>        Plaintiff,<br><br>    v.<br><br>JOE RICHARD, et al.,<br><br>        Defendants. | Case No. 2:21-cv-574<br><br>Judge Edmund A. Sargus, Jr.<br><br>Magistrate Kimberly A. Jolson<br><br>**DEFENDANT CITY OF COLUMBUS' MOTION FOR DETERMINATION REGARDING DUTY TO DEFEND PURSUANT TO R.C. 2744.07(D)** |

Defendant City of Columbus moves the Court, pursuant to R.C. 2744.07(D), for a determination that it has no duty to defend Defendant Joe Richard in this action. Defendant Richard acted manifestly outside of the scope of his employment in this case and in bad faith. Accordingly, the City has no duty to defend his actions. A memorandum in support is attached hereto.

                                            Respectfully Submitted,

                                            /s/ Alana V. Tanoury
                                            Paul M. Bernhart (0079543)
                                            Alana V. Tanoury (0092265)
                                            Assistant City Attorneys
                                            CITY OF COLUMBUS, DEPARTMENT OF LAW
                                            ZACH KLEIN, CITY ATTORNEY
                                            77 N. Front Street, Columbus, Ohio 43215
                                            (614) 645-7385 / (614) 645-6949 (fax)
                                            pmbernhart@columbus.gov
                                            avtanoury@columbus.gov

                                            *Attorneys for Defendant, City of Columbus*

## MEMORANDRUM IN SUPPORT

**A.   INTRODUCTION**

Defendant City of Columbus (the "City") moves the Court, pursuant to R.C. 2744.07(D), for a determination that it has no duty to defend Defendant Joe Richard ("Defendant Richard") in this action.  As it relates to the subject matter of this case, Defendant Richard acted manifestly outside of the scope of his employment and in bad faith.  Accordingly, the City has no duty to defend his actions.

**B.   STATEMENT OF RELEVANT FACTS**

At all relevant times, the City employed Plaintiff Serrina Jackson ("Plaintiff Jackson") as a Cadet in the City of Columbus, Division of Fire ("Division").  (Jackson Dep., p. 9)  The Cadet Program is an initiative aimed at increasing diversity and inclusion within the Division.  (*See* Affidavit of James Sancin, Ex. 1 ("Sancin Aff."), ¶ 2)  Cadets are classified as interns, who work thirty-five (35) hours per week for two years, learning about the paramilitary organizational structure of most fire departments and training to earn various firefighter and emergency services certifications.  (*Id.* at ¶ 2)  The goal of the program is to prepare Cadets to take the Civil Service Exam to become Division recruits or to get a job in other local fire departments or emergency services.

Defendant Richard previously worked as a Battalion Chief for the Division and was head of the Office of Recruitment.  (Richard Dep., pp. 11-12.)  The role of the Office of Recruitment is to obtain recruits for the Division.  (Richard Dep., p. 13.)  Defendant Richard had no role in training, disciplining, or terminating Cadets, and had no authority to make any hiring decisions or take tangible employment actions against the Cadets.  (Sancin Aff., ¶ 4)

Plaintiff alleges she was sexually harassed and assaulted by Defendant Richard on May 15, 2019.  (*See* Am. Compl., ECF No. 2.)  She reported the harassment on or about October 7, 2019,

a few days after two other female employees, Firefighter Aja Farris and Rebecca Diehm, came forward with harassment complaints against Defendant Richard. (Bridges Dep. Tr. at 89) These allegations, made in October 2019, were the first allegations against Richard of sexual harassment brought to a supervisor's attention. (*Id.* at 89-90) Defendant Richard was removed from his assignment in the Office of Recruitment, Diversity, and Inclusion effective October 4, 2019. Following Plaintiff Jackson's allegations, on or about October 9, 2019, the City ordered Richard not to be alone with female firefighters. On October 11, 2019, the City placed Defendant Richard on administrative leave pending the outcome of the investigation into these allegations. Defendant Richard retired from the Division of Fire on November 4, 2019 before the investigation was complete. (Richard Dep. Tr. at 122-123) This lawsuit followed.

      1. Plaintiff Jackson's Allegations

Plaintiff Jackson alleges that, on May 15, 2019, Defendant Richard requested that she come to his office. (Am. Compl. ¶ 16, ECF No. 2.) She alleges that Defendant Richard "rubbed his fingers across [her] lips and said, 'I wonder what these would feel like,'" and "touched [her] breasts and said, 'I wonder what those would look like outside your shirt.'" (Am. Compl. ¶ 17, ECF No. 2.) At the time of the incident, Plaintiff Jackson had a knee injury. (Am. Compl. ¶ 18, ECF No. 2; Jackson Dep. pp. 167-68.) She alleges that Defendant Richard asked her to see her knee and she responded by pulling up her pant leg up to show him. (Am. Compl. ¶ 18, ECF No. 2; Jackson Dep. at pp. 193-95.) She alleges he told her he could not see her knee like that and asked her to pull her pants down. (*Id.*) She alleges Richard pulled her pants down from around her waist and then coerced her into removing her pants. (Jackson Dep. pp. 193-95; Am. Compl. ¶ 20.) She was not wearing underwear. (*Id.*) Richard then told her to do an exercise called "thrusters," which are similar to burpees, while he watched. (*Id.*) She alleges he grabbed her vagina, inserted his finger,

and then smelled his finger. (Jackson Dep., p. 195; Am. Compl. ¶ 21.) She asserts that she then pulled up her pants and left his office. (Am. Compl. ¶ 21; Jackson Dep., pp. 192-95.) She alleges that on her way out of the room, Defendant Richard said, among other things, "who do you think they will believe: me or you?" (Am. Compl. ¶ 22; Jackson Dep., p. 195.) He also told her he could make a phone call and she would be out of the Cadet Program. (Am. Compl ¶¶ 21-22.) In addition to this incident, Plaintiff Jackson alleges that Defendant Richard looked up her dress on one occasion and made several sexual comments to her, including asking her to download the Marco Polo app to send her sexual videos. (Am. Compl. ¶¶ 15, 26, 29, 30, 31; Jackson Dep. pp. 21, 30, 145-48, 183-84, 215-16.)

    2. Defendant Richard's Version of Events

Defendant Richard denies that he told Plaintiff Jackson to take her pants off, pulled her pants down, touched her vagina, or made the alleged statements. (Richard Dep. at pp. 140-46.) Defendant Richard admits, however, that Plaintiff Jackson was naked from the waist down in his office on May 15, 2019. (Richard Dep. p. 143). According to Defendant Richard, Plaintiff Jackson voluntarily removed her pants after he said "no, no, no, no. You don't have to do that. . ." (Richard Dep. 144-46.) Nevertheless, he testified that, while her pants were down in his office, the following occurred:

> She then asked for me to assist her to put on the [knee] brace. I helped to put on the brace, laced it up. She walked. I said, how does that feel? She walked across the room. She said, it's okay. I said, all right. I said, well, do you have anything similar? Is there anything that you can do that simulates, you know, using this knee brace. She said, in the exercises -- she said, we do burpees. I asked her what was that. Then she demonstrated it for me. She did maybe two, three, four reps. I don't know how many. And then she got up, and I said, okay. That's enough, Ms. Jackson. Please put your pants back on.

(Richard Dep. 145-46.) Defendant Richard also admits to talking to Plaintiff Jackson on the phone regarding sex and testified that they discussed her sending him sexual photographs and/or videos

3

via an app such as Marco Polo or Snapchat. (Richard Dep., 158-161, 173-74.) Defendant Richard never reported any of these actions to anyone at the City. (Richard Dep., p. 171.)

**C. STANDARD OF LAW**

R.C. 2744.07(A)(1) generally requires a political subdivision to "provide for the defense of an employee, in any state or federal court, in any civil action or proceeding which contains an allegation for damages for injury, death, or loss to person or property caused by an act or omission of the employee in connection with a governmental or proprietary function." R.C. 2744.07(A)(1). A political subdivision is not required to provide for the defense of an employee, however, if "the act or omission occurred while the employee was not acting in good faith," or if "the act or omission occurred while the employee was acting manifestly outside the scope of the employee's employment or official responsibilities." R.C. 2744.07(A)(2). R.C. 2744.07(D) sets forth the following procedure for when a political subdivision refuses to provide a defense for an employee:

> If a political subdivision refuses to provide an employee with a defense in a civil action or proceeding as described in division (A) of this section, upon the motion of the political subdivision, the court shall conduct a hearing regarding the political subdivision's duty to defend the employee in that civil action. The political subdivision shall file the motion within thirty days of the close of discovery in the action. After the motion is filed, the employee shall have not less than thirty days to respond to the motion.
>
> At the request of the political subdivision or the employee, the court shall order the motion to be heard at an oral hearing. At the hearing on the motion, the court shall consider all evidence and arguments submitted by the parties. The court shall determine whether the political subdivision has the duty to defend the employee under division (A) of this section. The pleadings shall not be determinative of whether the employee acted in good faith or was manifestly outside the scope of employment or official responsibilities.
>
> If the court determines that the political subdivision has the duty to defend the employee under division (A) of this section, the court shall order the political subdivision to defend the employee in the action.

R.C. 2744.07(D).

**D.     ARGUMENT**

Discovery closed in this case on September 30, 2021. The City now moves the Court for a determination that the City has no duty to defend Defendant Richard in this action because the alleged acts at issue occurred when Defendant Richard was not acting in good faith or manifestly within the scope of his employment. *See* R.C. 2744.07(A); R.C. 2744.07(D).

   1. <u>Defendant Richard's Conduct Was Manifestly Outside of the Scope of his Employment</u>

Defendant Richard was acting manifestly outside of the scope of his employment as it relates to the conduct at issue in this lawsuit. "The determination of whether conduct is within or outside the scope of employment necessarily turns on the fact finder's perception of whether the employee acted, or believed himself to have acted, at least in part, in his employer's interests." *Cantwell v. Franklin Cty. Bd. of Commrs.*, 10th Dist. Franklin No. 11AP-849, 2012-Ohio-2273, ¶ 16 (citing *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007 Ohio 4948, ¶ 17, 874 N.E.2d 1155).

Here, regardless if the Court believes Plaintiff Jackson's or Defendant Richard's version of events, it is clear that Defendant Richard was acting manifestly outside of the scope of his employment. Defendant Richard admits that he asked Plaintiff if there was anything she could do that "simulates, you know, using this knee brace" while she was naked from the waist down in his office. (Richard Dep. 145-46.) Even if mentoring, coaching, and working with Cadets was part of Defendant Richard's job responsibilities (which the City does not concede), it was clearly not within the scope of his employment to have Plaintiff Jackson in his office performing exercises while naked from the waist down. It also was not within the scope of his employment to speak with Plaintiff Jackson on the phone regarding sex or to discuss downloading apps such as Marco Polo or Snapchat to send sexual videos. (Richard Dep. 158-161, 173-74.) Such conduct is in no

5

way in the City's interests and instead is both unauthorized and inappropriate. *See* City of Columbus' Anti-Harassment and Sexual Harassment Policy, Ex. 2.[1]

Because Defendant Richard's actions obviously exceeded his duties as a Battalion Chief for the Division's Office of Recruitment, Diversity, and Inclusion, and were not in the City's best interest, the City has no duty to defend him. *See e.g.*, *Cantwell*, 2012-Ohio-2273, ¶ 16 (finding conduct outside of the scope of employment and explaining that, even though appellant's duties involved serving meals to inmates, "appellant engaged in activities that did not involve his duty to serve meals, i.e., the asking of an inmate to place his penis on a sandwich and the taking of a photograph of the inmate's genitals"); *McCormack v. Jefferson Area Local School Dist.*, 2018-Ohio-3744, 112 N.E.3d 338, ¶ 33 (11th Dist.) (finding no duty to defend where "appellant could not have reasonably believed he was acting in the District's best interests when he sexually abused the plaintiffs in the gym and at the newspaper's offices. Although he was employed as a basketball coach when he abused the plaintiffs, his acts obviously exceeded his coaching duties.").

2. No Good Faith

Furthermore, Defendant Richard's actions were not in good faith. "A lack of good faith is the equivalent of bad faith," and bad faith, "although not susceptible of concrete definition," "imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Slater v. Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, 187 N.E.2d 45, paragraph two of the syllabus (overruled on other grounds by *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 1994 Ohio 461, 644 N.E.2d 397). Here, there is no reasonable basis to conclude that the above discussed actions were

---

[1] Moreover, upon learning about the allegations against Defendant Richard, the City placed Richard on administrative leave and began an investigation. The Division of Police also investigated Plaintiff Jackson's allegations.

performed in good faith. For this additional reason, the City has no duty to defend Defendant Richard's actions in this lawsuit, and this Motion should be granted.

                                              Respectfully Submitted,

                                              /s/ Alana V. Tanoury
                                              Paul M. Bernhart (0079543)
                                              Alana V. Tanoury (0092265)
                                              Assistant City Attorneys
                                              CITY OF COLUMBUS, DEPARTMENT OF LAW
                                              ZACH KLEIN, CITY ATTORNEY
                                              77 N. Front Street, Columbus, Ohio 43215
                                              (614) 645-7385 / (614) 645-6949 (fax)
                                              pmbernhart@columbus.gov
                                              avtanoury@columbus.gov

                                              *Attorneys for Defendant, City of Columbus*

## CERTIFICATE OF SERVICE

I hereby certify that, on **October 28, 2021**, I electronically filed the foregoing with the Clerk of the Court by using this Court's CM/ECF System, which will send a notice of this electronic filing to all counsel of record in this matter.

/s/ Alana V. Tanoury
Alana V. Tanoury (0092265)
Assistant City Attorney