UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **SERRINA JACKSON,** | |
| Plaintiff, | Case No. 2:21-574 |
| v. | JUDGE EDMUND A. SARGUS, JR. |
| | Magistrate Judge Kimberly A. Jolson |
| **JOE RICHARD,** *et al.*, | |
| Defendants. | |

## OPINION AND ORDER

This matter is before the Court on Defendant City of Columbus's ("the City's") Motion for Determination Regarding Duty to Defend (ECF No. 20) and the City's Motion for Summary Judgment (ECF No. 19). Based on the following, the Court **GRANTS** the City's Motion for Determination Regarding Duty to Defend and **GRANTS IN PART** and **DENIES IN PART** the City's Motion for Summary Judgment.

### I. Background

This case was originally filed in the Franklin County Court of Common Pleas, and Defendants filed a Notice of Removal to this Court on February 9, 2021. (ECF No. 1.) On February 11, 2021, Plaintiff Serrina Jackson filed an Amended complaint against Defendants Joe Richard ("Richard"), Columbus Division of Fire, and the City. (ECF No. 2.) The Amended Complaint asserts one count of sexual harassment in violation of Ohio Revised Code § 4112.02; one count of sexual harassment in violation of Title VII, 42 U.S.C. §§ 2000e et seq.; one count of gender discrimination in violation of Ohio Revised Code § 4112.02; one count of gender discrimination in violation of Title VII, 42 U.S.C.§§ 2000e et seq.; one count of intentional infliction of emotional distress and negligent infliction of emotional distress; one count of

negligence, including willful, wanton, and reckless misconduct and ordinary negligence; one count against the City under the theory of respondeat superior; one count of negligent retention and supervision; and, lastly, one count of sexual battery in violation of Ohio Revised Code § 2907.03.

Plaintiff began her employment as a Cadet with the Division of Fire on April 8, 2019. (ECF No. 39 at PageID #1749.) At the time Plaintiff was hired, Richard was employed as a Battalion Chief within the Division of Fire and was the head of the Office of Recruitment. (ECF No. 19 at PageID #277.) The Office of Recruitment's role is to obtain recruits for the Division of Fire. (*Id.*) Plaintiff alleges that Richard repeatedly sexually harassed her beginning in February or March of 2019, prior to when she officially started the cadet program, including attempting to look up her dress, making inappropriate sexual comments, asking her for sex, and requesting that Plaintiff download an app called Marco Polo to send Richard sexual videos." (ECF No. 39 at PageID #1750.) The parties agree that on May 15, 2019, Richard asked Plaintiff's cadet supervisor to bring Plaintiff to Richard's office. (*Id.*) After Plaintiff and the supervisor arrived in Richard's office, he dismissed the supervisor and he and Plaintiff were alone in his office. (*Id.* at PageID #1750–51.) The supervisor told others that she felt uncomfortable when Richard dismissed her and asked her to shut the door. (ECF No. 28 at PageID #506.) Richard and Plaintiff discussed her knee injury, which had been affecting her performance in the cadet program. (ECF No. 39 at PageID #1751.) At some point during the conversation, according to Plaintiff, Richard asked her to remove her pants and do exercises. (*Id.*) Plaintiff alleges that Richard told her that if she didn't take her pants off, he could get her fired. (*Id.*) Richard admits that Plaintiff removed her pants and did exercises but claims that he did not ask her to do so and tried to stop her from removing her pants. (ECF No. 34 at PageID #1197–1201.) According to Plaintiff, as she performed the

exercises, Richard sexually assaulted her. (ECF No. 39 at PageID #1751.) Richard denies these allegations. (ECF No. 34 at PageID #1201–02.)

Plaintiff is not the only city employee to have accused Richard of inappropriate behavior. Aja Farris, another employee of the Columbus Division of Fire, has also claimed that Richard acted inappropriately towards her. According to Farris, Richard made comments about her appearance in February of 2019 at a retirement party in the presence of several other people from the Division of Fire. (ECF No. 31 at PageID #653–54.) Additionally, Farris spoke with several other people within the Division of Fire, including Lieutenant Zachary Bridges, "about how uncomfortable [she was]," and that she "d[id]n't ever want to be alone with [Richard]." (*Id.* at PageID #655.) Following the conversation, Lt. Bridges "made it where [Farris] did not have to be alone with [Richard]." (*Id.* at PageID #656.) Farris stated that she had the conversation with Lt. Bridges in late January or early February 2019. Although Farris did not tell Lt. Bridges about the specific incident at the retirement party, she told him that she did not want to be alone with Richard because she felt "that a lot of his comments were inappropriate, that [she] felt like he undressed [her] with his eyes[, and that h]e always had some kind of sexual connotation behind the comments that he would make." (*Id.* at PageID #656–57.) Farris stated that she spoke to Lt. Bridges about Richard causing her to feel uncomfortable "maybe ten times." (*Id.* at PageID #657.) Additionally, Farris stated that after Richard was removed from the Office of Recruitment, Lt. Bridges asked Farris if she believed that he should have reported Richard's conduct sooner, which shows that Lt. Bridges was aware of Richard's conduct prior to when Lt. Bridges reported Richard's conduct "up the chain of command to Assistant Chief Blair" in October of 2019. (*Id.* at PageID #664–66; ECF No. 43 at PageID #1809.)

Rebecca Diehm, a public relations specialist for the Division of Fire, also accused Richard of inappropriate behavior. Diehm alleged that in October or November of 2019, she visited Richard's office and believes that Richard tried to take a picture under her dress with his cell phone. (ECF No. 29 at PageID #564–65.) Diehm reported the incident to Christopher Blair, who at the time was an Assistant Chief of the Administration Bureau. (*Id.* at PageID #571.) Prior to that incident, Diehm claimed that Richard made inappropriate comments to her including asking her on a date, asking about her personal life, and commenting on her appearance. (*Id.* at PageID #572.)

Julie Dassylva worked as a recruiter for the Columbus Division of Fire in 2019. (ECF No. 28 at PageID #481.) Richard was her supervisor beginning in 2018. (*Id.* at PageID #484.) Dassylva claims that Richard initiated a very uncomfortable conversation in his office about Richard's attempts to recruit candidates in the steam room at the YMCA, which Dassylva discussed with others within the Division of Fire. (*Id.* at PageID #485–487.) Dassylva stated that Richard frequently "looked at [her] chest instead of looking at [her] face when he[ was] talking to [her]." (*Id.* at PageID #490.) Dassylva also claimed that there was an "unwritten rule" in the Office of Recruitment that Richard was not to be alone with Farris, and that Lt. Bridges was aware of this "rule." (*Id.* at PageID #501–02.)

Sundeepti Jindal, an employee in the Mayor's Office, described an incident in which Richard made her uncomfortable and asked her inappropriate questions about her personal life, including whether she was a virgin, the ethnicity of men she had been with, and whether everything on her body was "real." (ECF No. 33 at PageID #999–1005.) Richard is also alleged to have made inappropriate and/or sexual comments towards former Cadet Tiffany Thomas (ECF No. 36 at PageID #1572–80) and human resource analyst Holley Fannin (ECF No. 30 at PageID #606–16).

4

The City claims it did not know that Richard was sexually harassing employees until it was reported by Plaintiff, Farris, and Diehm in October 2019. (ECF No. 19 at PageID #277–78.) The City claims that this was the first time any allegations against Richard were brought to a supervisor's attention. (*Id.* at PageID #278.) Following the allegations, Richard was removed from his position in the Office of Recruitment and ordered not to be alone with female firefighters. (*Id.*) Richard was then placed on administrative leave pending the outcome of an investigation into the allegations, and he retired before the investigation was complete. (*Id.*) On October 28, 2021, the City moved for summary judgment on all of Plaintiff's claims against the City. (ECF No. 19.) Also on October 28, 2021, the City moved for a determination that it has no duty to defend Defendant Joe Richard in this action because Richard acted manifestly outside the scope of his employment and in bad faith. (ECF No. 20.) According to the City, Richard's conduct in having Plaintiff "in his office performing exercises while naked from the waist down" and in speaking with Plaintiff "on the phone regarding sex or to discuss downloading apps such as Marco Polo or Snapchat to send sexual videos" was manifestly outside the scope of Richard's employment with the City. (*Id.* at PageID #302.) Further, the City claims that Richard's actions were not in good faith. (*Id.* at PageID #303.)

## II. Legal Standard

### A. Motion for Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the burden of showing that no genuine issues of material fact exist." *RJ Control Consultants, Inc. v. Multiject, LLC*, 981 F.3d 446, 452 (6th Cir. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

5

The burden then shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "In order for the non-movant to defeat a summary-judgment motion, there must be evidence on which the jury could reasonably find for the [non-movant]." *Clabo v. Johnson & Johnson Health Care Sys., Inc.*, 982 F.3d 989, 992 (6th Cir. 2020) (alteration in original) (quoting *Bard v. Brown County*, 970 F.3d 738, 748 (6th Cir. 2020)). The court must "consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Johnson v. City of Saginaw*, 980 F.3d 497, 506 (6th Cir. 2020) (quoting *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 679 (6th Cir. 2013)). The ultimate question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### B. Duty to Defend

Generally, a political subdivision "shall provide for the defense of an employee, in any state or federal court, in any civil action or proceeding which contains an allegation for damages for injury, death, or loss to person or property caused by an act or omission of the employee in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.07(A)(1). However, there is not always a duty to defend, and § 2744.07(A)(2) states in relevant part:

> (A)(2) A political subdivision does not have the duty to provide for the defense of an employee under division (A)(1) of this section if any of the following apply:
>
> > (a) The act or omission occurred while the employee was not acting in good faith.
> >
> > (b) The act or omission occurred while the employee was acting manifestly outside the scope of the employee's employment or official responsibilities.

Ohio Rev. Code § 2744.07(A)(2).

### III. Discussion

#### A. Motion for Summary Judgment

##### 1. Sexual Harassment and Gender Discrimination

The Sixth Circuit has recognized that "the elements and legal standards for establishing unlawful sex discrimination are the same under Ohio Rev. Code § 4112.02 and under 42 U.S.C. § 2000e–2." *Laderach v. U-Haul of Nw. Ohio*, 207 F.3d 825, 828 (6th Cir. 2000). To succeed on a hostile work environment sexual harassment claim, a plaintiff must show that:

> (1) the employee is a member of a protected class; (2) the employee was subject to unwelcomed sexual harassment ...; (3) the harassment complained of was based on sex; (4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive work environment ...; and (5) *the existence of respondeat superior liability*.

*Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 49 (6th Cir. 1996) (internal citations omitted) (emphasis in original). In interpreting the fifth element, courts have distinguished between harassment by a coworker and harassment by a supervisor.

"[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). A "tangible employment action" includes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 429 (internal quotations omitted). When harassment by a supervisor results in a tangible employment action against a plaintiff, an employer is vicariously liable for the "harm caused by misuse of supervisory authority" and "[n]o affirmative defense is available." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807–08 (1998). When no tangible employment action is taken, a defending employer may raise an affirmative defense comprised of two necessary elements: "(a)

7

that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* at 807. However, in the case of coworker harassment, "an employer's liability . . . is based on its response to the reported sexual harassment: an employer is liable if it does not respond in a 'reasonable' manner." *Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 747 (6th Cir. 2008). A company may be liable for coworker harassment if its "response manifests indifference or unreasonableness in light of the facts the employer knew or should have known." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 338 (6th Cir. 2008) (internal quotations omitted); *see also Chapa v. Genpak, L.L.C.*, 2014-Ohio-897, ¶ 76. An employer's response to coworker harassment "is generally adequate if it is reasonably calculated to end the harassment. And whether a response is effective is measured not by the extent to which the employer disciplines or punishes the alleged harasser, but rather if the steps taken by the defendant halt the harassment. Evaluation of the response is a fact-specific inquiry and must be done on a case-by-case basis." *McGraw v. Pilot Travel Ctrs., L.L.C.*, 2012-Ohio-1076, ¶ 25 (citing *Satterfield v. Karnes,* 736 F.Supp.2d 1138, 1162–63 (S.D.Ohio 2010)).

The City claims that it is entitled to summary judgment because Plaintiff cannot establish a claim of sexual harassment or gender discrimination. According to the City, Richard was not Plaintiff's supervisor. Therefore, the City argues that its "'liability in cases of coworker harassment is not derivative, but instead depends on the [City's] own acts or omissions.'" (ECF No. 19 at PageID #280 (quoting *Mullins*, 291 F. App'x at 750).) The City claims that its response to Richard's harassment was "entirely reasonable and manifested nothing close to indifference." (*Id.* at PageID #281.) On October 4, 2019, two days after what the City claims was the first

allegation of any type of sexual harassment, Richard was removed from his position in the Office of Recruitment. (*Id.*) After Plaintiff reported the alleged sexual assault, Richard was placed on administrative leave and the City began an investigation into the allegations. (*Id.*) Further, the City claims, no one else reported "the type of severe harassment, including sexual assault, which Plaintiff alleges." (*Id.* at PageID #282.) Therefore, the City argues that even if it "should have somehow had knowledge that Richard had made some women uncomfortable, which it did not, it had absolutely no basis to believe that he would sexually assault Plaintiff." (*Id.*)

Plaintiff argues that Richard was in fact her supervisor. According to Plaintiff, Richard's "role in establishing the application for cadets," and "task[ing] individuals within the recruitment department to assist with the cadet program" creates a genuine issue of material fact as to whether Richard was Plaintiff's supervisor. (ECF No. 39 at PageID #1764.) Plaintiff also claims that, contrary to Richard's contention that he did not have the power to discipline Plaintiff, if she refused to meet with him she would have been "subject to adverse consequences." (*Id.*) Plaintiff claims that the Office of Recruitment's connection with the cadet program, as well as Richard's "tutor[ing] and mentor[ing] cadets" further show that Richard was Plaintiff's supervisor. (*Id.*) Additionally, Plaintiff claims that Richard told her that other people "want[ed] [Plaintiff] out of the [cadet] program" and that Richard was "the only reason why [she] was there." (ECF No. 32 at PageID #736.) Further, Plaintiff claims that even if the Court finds that Richard was not her supervisor, there is still "a genuine issue of material fact for employer liability under the co-worker harassment standard." (ECF No. 39 at PageID #1767.) According to Plaintiff, the evidence shows that Richard was "a known serial harasser prior to Plaintiff's enrollment with the cadet program and even during her enrollment." (*Id.*) Plaintiff alleges that the City had notice of Richard's behavior as early as January or February 2019, and that in October of 2019 when Farris and Diehm

9

reported Richard's behavior, Plaintiff was told that the city was only going to move Richard to another location. (*Id.* at PageID #1768.)

In response, the City argues that Richard was not Plaintiff's supervisor because he "had no role in training, disciplining, or terminating cadets, and had no authority to make any hiring decisions or take tangible employment actions against the cadets." (ECF No. 43 at PageID #1815.) Richard was in charge of the Office of Recruitment, which "was totally separate from the cadet program." (*Id.*) Therefore, the City claims, Richard was Plaintiff's coworker and Plaintiff's sexual harassment claim against the City must be analyzed as such.

While Richard may not have been Plaintiff's direct supervisor, his role in tutoring and mentoring cadets, his claims to Plaintiff that he was the only reason she was still in the cadet program and that he had full control over her, and Plaintiff's claim that she would be "subject to adverse consequences" if she refused to meet with Richard show that a genuine issue of material fact exists as to whether Richard could be considered Plaintiff's supervisor for purposes of Plaintiff's sexual harassment claim. Additionally, even if Richard was Plaintiff's coworker and could not be considered her supervisor, there is a genuine issue of material fact as to whether the City "manifest[ed] indifference or unreasonableness in light of facts that [the City] knew or should have known." *Hawkins*, 517 F.3d at 338. The City claims that prior to October 2019 it had no knowledge of Richard's alleged behavior, and that Plaintiff's claim that Lt. Bridges had knowledge of Richard sexually harassing female employees is not supported by the record. (ECF No. 43 at PageID #1812–13.) However, all of the following occurred prior to October 2019:

- According to Aja Farris's deposition, during her first week of work in late January or early February of 2019 she "advised [her] lieutenant, Lieutenant Zachary Bridges, that [Richard] makes [her] uncomfortable and that [she] do[es] not want

10

to ever be alone with him," and Lt. Bridges "made several accommodations" to make sure Farris did not have to be alone with Richard. (ECF No. 31 at PageID #655–56.) Farris testified that she told Lt. Bridges during that conversation that Richard's "comments were inappropriate, that [Farris] felt like [Richard] undressed [her] with his eyes[, that Richard] always had some kind of sexual connotation behind the comments that he would make." (*Id.* at PageID #656–57.)

- Farris testified that the conversation in January or February of 2019 was not the only one she had with Lt. Bridges regarding Richard's behavior, but that she spoke to him "maybe ten times" about it. (*Id.* at PageID #657.) Farris testified that Lt. Bridges was "very much aware that [Farris] was uncomfortable with [Richard]," and that Lt. Bridges would send Farris messages to check on her and ask if she was okay when there were times she had to be alone with Richard. (*Id.*) Specifically, Lt. Bridges asked Farris if she would be okay attending a multi-cultural roundtable where Richard would be present on August 13, 2019, and if she would be able to "steer clear of" Richard at the event. (*Id.* at PageID #658.)

- Julie Dassylva testified that there was an "unwritten rule" within the Division of Fire starting from when Farris arrived in the Office of Recruitment that if anyone saw Farris alone with Richard they should intervene. (ECF No. 28 at PageID #502.) Dassylva also testified that Lt. Bridges was aware of the "unwritten rule" and that she personally had discussed the rule with Lt. Bridges. (*Id.*)

- Farris testified that after Richard was removed from his position, Lt. Bridges "apologized to [her] on several occasions" and "came to [her] house unexpectedly and apologized to [her]" for not doing something about Richard's behavior prior to

11

> October of 2019.  (ECF No. 31 at PageID #664–65.)  Farris testified that "as far as what [she] recall[ed] from [the Division of Fire's] sexual harassment training . . . from any sexual harassment training, not just the fire department, you tell your immediate supervisor" and "that's what [she] did" by telling Lt. Bridges.  (*Id.* at PageID #666.)  Farris testified that Lt. Bridges tried to "shelter" her from Richard but "[Richard's] behavior didn't change" and Lt. Bridges "made excuses for [Richard]."  (*Id.* at PageID #665.)

*See Faragher*, 524 U.S. at 775 (Sexual harassment by two supervisors was "pervasive enough to support an inference that the City had 'knowledge, or constructive knowledge'" of the harassment when "a third supervisor had knowledge of the harassment and failed to report it to City officials.").  This shows a genuine issue of material fact as to whether the City "manifested indifference or unreasonableness" in not acting prior to October of 2019.  Therefore, summary judgment is denied as to Plaintiff's claims for sexual harassment and gender discrimination under Ohio Rev. Code § 4112.02 and under 42 U.S.C. § 2000e–2.

### 2.  Negligent Supervision or Retention

The City claims that Plaintiff also cannot establish that the City is liable for negligent supervision or retention.  The elements necessary for a plaintiff to show negligent supervision or retention are "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries."  *Evans v. Ohio State Univ.*, 112 Ohio App. 3d 724, 739, (1996) (internal citations omitted).  Additionally, for the City to be held liable

for negligent supervision or retention as to Plaintiff's sexual assault claim, Richard's actions must have been foreseeable. *Id.* at 740.

The City's arguments focus on the third element, or its actual or constructive knowledge of Richard's behavior. The City claims it did not know that Richard was sexually harassing employees until it was reported in October 2019. (ECF No. 19 at PageID #285.) The City also claims that Richard's conduct was not foreseeable because "[n]ot a single woman suggested Richard did anything more than hug them." (*Id.* at PageID #286.) Plaintiff claims that Richard's actions could have been anticipated because "[e]vidence has shown that Richard harassed numerous women within the City, all within a relatively short period of time." (ECF No. 39 at PageID #1772.) Plaintiff claims that, contrary to the City's arguments that it did not know of Richard's conduct until October 2019, Farris and Diehm "had discussed harassing behaviors with Lt. Bridges [as] early as January or February of 2019." (*Id.* at PageID #1770.) Additionally, Plaintiff points to Richard's harassment of several other employees within the City, including an employee within the human resources department who relayed the conversation to a lieutenant shortly after it occurred. (ECF No. 39 at PageID #1770.)

As the Court discussed above, several things occurred that could show the City's knowledge of Richard's behavior prior to October 2019. The Court finds that there is a genuine issue of material fact as to whether the City had knowledge of Richard's conduct and whether Richard's actions towards Plaintiff were foreseeable. Therefore, summary judgment is denied as to Plaintiff's claim of negligent supervision or retention.

### 3. Respondeat Superior

The City claims that it cannot be held liable for Richard's conduct under the doctrine of respondeat superior because Richard's acts were outside the scope of his employment. "It is well-

13

established that in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment. . . . In other words, an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business." *Byrd v. Faber*, 57 Ohio St. 3d 56, 58–59 (1991). Whether an employee is acting within the scope of his employment is typically a question of fact, however "when reasonable minds can come to but one conclusion [] the issue regarding scope of employment become[s] a question of law." *Osborne v. Lyles*, 63 Ohio St. 3d 326, 330 (1992).

According to both Plaintiff and Richard, after Plaintiff's supervisor brought her to Richard's office on May 15, 2019, Richard dismissed Plaintiff's supervisor and Plaintiff and Richard were alone in his office. (ECF No. 39 at PageID #1751; ECF No. 34 at PageID #1183–84.) Richard asked to see Plaintiff's knee so that he could assess the knee injury that had affected her performance in the cadet program. (ECF No. 39 at PageID #1751; ECF No. 34 at PageID #1186.) Richard and Plaintiff disagree about the circumstances under which Plaintiff removed her pants and Richard's subsequent actions. (ECF No. 39 at PageID #1751; ECF No. 34 at PageID #1186–99.) Additionally, Plaintiff claims that "Richard also sexually harassed Plaintiff between February or March of 2019 and October 2019, both on the fire campus and off," and that "Richard's actions were always under the guise of helping Plaintiff stay in the cadet program." (ECF No. 39 at PageID #1774.) Plaintiff claims that this case is similar to *Osborne v. Lyles*, in which the court determined that "material questions of fact exist[ed]" as to whether an off-duty police officer who assaulted someone while in the course of securing the scene of an accident was acting within the scope of his employment, and that "reasonable minds could find that Richard was acting within the scope of his employment." (*Id.* at PageID #1774.)

Defendant claims that "none of Richard's allegedly unlawful acts were committed in the course of his employment," and cite to *Simpkins v. Grace Brethren Church of Delaware*. (ECF No. 19 at PageID #286–87.)  In *Simpkins*, the court noted that "[w]hile an employer may be held vicariously liable for acts of their employees in the scope of the employment, Ohio courts have generally held an intentional tort such as sexual assault or rape, 'which in no way facilitates or promotes the employer's business, is so far outside the scope of employment that employers should not be held liable for such acts under the doctrine of respondeat superior or vicarious liability.'" *Simpkins v. Grace Brethren Church of Delaware*, 2014-Ohio-3465, ¶ 50 (citing *Stephens v. A–Able Rents Co.*, 101 Ohio App.3d 20 (8th Dist.1995)); *see also Sitton v. Massage Odyssey, LLC*, 2020-Ohio-4282; *Kingston Mound Manor I v. Keeton*, 2019-Ohio-3260; *Evans v. Thrasher*, 2013-Ohio-4776.

Based on the principal cited in *Simpkins*, the Court concludes that the alleged sexual assault is "so far outside the scope of employment that [the City] should not be held liable for such acts under the doctrine of respondeat superior." *Simpkins*, 2014-Ohio-3465, ¶ 50 (internal citations omitted).  However, the law regarding alleged sexual harassment is less clear.  While Ohio courts have unambiguously held that intentional torts such as sexual assault or rape are clearly outside the scope of employment as a matter of law, there is no such definitive language regarding a claim of sexual harassment.  Whether an employee is acting within the scope of his employment is typically a question of fact for the jury, and "[t]he willful and malicious character of an employee's act does not always, as a matter of law, remove the act from the scope of employment, unless the act is so divergent that its very character severs the employment relationship." *Stephens*, 101 Ohio App.3d 20 at 30.  For example, in *Osborne v. Lyles*, the court determined that "material questions of fact exist[ed]" as to whether an off-duty police officer who assaulted someone while in the

15

course of securing the scene of an accident was acting within the scope of his employment. *Osborne*, 63 Ohio St. 3d at 334. *Osborne* also relied on a Michigan case, *Hill v. Mitchell*, which found that for purposes of a motion to dismiss, off-duty police officers who shouted racial epithets, chased, and threw rocks at the plaintiff should be seen as acting within the scope of their employment. *Hill v. Mitchell*, 653 F. Supp. 1194 (E.D. Mich. 1986).

As to Plaintiff's sexual harassment claim, whether Richard was acting within the scope of his employment is a question of fact to be decided by the jury. *Osborne*, 63 Ohio St.3d at 330 ("[I]t is commonly recognized that whether an employee is acting within the scope of his employment is a question of fact to be decided by the jury."). A reasonable jury could conclude that Richard was acting within the scope of his employment during the alleged sexual harassment. Therefore, summary judgment for Plaintiff's claim of respondeat superior is granted as to Plaintiff's claim of sexual assault and denied as to Plaintiff's claim of sexual harassment.

### 4. Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress

The City also argues that Plaintiff cannot establish a claim for intentional or negligent infliction of emotional distress. Plaintiff clarifies that she "is not pursuing a claim for negligent infliction of emotional distress against the City and hereby withdraws any such claim." (ECF No. 39 at PageID #1776.) Therefore, the Court will not address the City's arguments related to negligent infliction of emotional distress. According to the City, it is not liable for intentional emotional distress caused by Richard's alleged actions for the same reasons it is not liable under the theory of respondeat superior. (ECF No. 19 at PageID #287.) "Generally, if the employee tortfeasor acts intentionally and willfully for his own personal purposes, the employer is not responsible, even if the acts are committed while the employee is on duty. In other words, an employer is not liable for independent self-serving acts of his employees which in no way facilitate

16

or promote his business." *Bauman v. Bob Evans Farms, Inc.*, 2007-Ohio-145, ¶ 13 (internal citations omitted). However, as the Court discussed above in Section III.A.3, "[t]he willful and malicious character of an employee's act does not always, as a matter of law, remove the act from the scope of employment, unless the act is so divergent that its very character severs the employment relationship." *Stephens*, 101 Ohio App.3d 20 at 30. For the reasons discussed in Section III.A.3, the Court concludes that Richard's alleged sexual assault of Plaintiff was not within the scope of his employment. However, there is a genuine issue of material fact as to whether Richard was acting within the scope of his employment with respect to Plaintiff's sexual harassment claim. Therefore, summary judgment on Plaintiff's claim of intentional infliction of emotional distress is granted as to Plaintiff's claim of sexual assault and denied as to Plaintiff's claim of sexual harassment. Summary judgment on Plaintiff's claim of negligent infliction of emotional distress is denied as moot.

B. **Duty to Defend**

The City moves the Court for a determination that it has no duty to defend Richard in this action. The City claims that Richard "was not acting in good faith or manifestly within the scope of his employment." (ECF No. 20 at PageID #302 (citing Ohio Rev. Code § 2744.07(A)(2)).) The City claims that it was "clearly not within the scope of [Richard's] employment to have Plaintiff Jackson in his office performing exercises while naked from the waist down. It was also not within the scope of his employment to speak with Plaintiff Jackson on the phone regarding sex or to discuss downloading apps such as Marco Polo or Snapchat to send sexual videos." (*Id.* at PageID #302.) According to the City, such conduct "is in no way in the City's interests and instead is both unauthorized and inappropriate." (*Id.* at PageID #302–03.) Further, the City argues that it has no duty to defend Richard because his actions were not in good faith. (*Id.* at PageID #303.) Richard

17

responds that a determination of whether he was acting within the scope of his employment is a question of fact for the jury. (ECF No. 25 at PageID #320.) Richard also claims that there are genuine issues of material fact as to whether he acted in good faith. (*Id.* at PageID #321.)

The Court's analysis in Section III.A.3 of this opinion as to whether Richard acted within the scope of his employment also applies here. Richard claims that whether he acted in good faith is a question for the jury. *See Moore v. City of Cleveland*, 2017-Ohio-1156, ¶ 16 ("Whether an employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner is generally a question of fact for the jury."). However, whether a political subdivision must provide for the defense of an employee under Ohio Rev. Code § 2744.07(A) "remains a question of law to be determined by the court." *See id.*; Ohio Rev. Code § 2744.07(D) ("The court shall determine whether the political subdivision has the duty to defend the employee under division (A) of this section."); *see also Anderson v. Sutton*, 717 F. App'x 548, 552 (6th Cir. 2017) (finding that corrections officer was not acting in good faith and the county was entitled to summary judgment as to its duty to defend).

An employee's bad faith has been described as "evincing a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." *Moore*, 2017-Ohio-1156, ¶ 14 (internal citations omitted). The City argues that "there is no reasonable basis to conclude that [Richard's alleged sexual assault and harassment of Plaintiff] were performed in good faith." (ECF No. 20 at PageID #303–04.) This Court agrees. *See McCormack v. Jefferson Area Loc. Sch. Dist.*, 2018-Ohio-3744, ¶ 28 (affirming trial court's finding that employee was not acting in good faith when he "used his position of authority over the plaintiffs to manipulate and sexually abuse them"). Therefore, the Court finds that the City has no duty to defend Richard under § 2744.07.

## IV. Conclusion

Based on the foregoing, the Court **GRANTS** the City's Motion for Determination Regarding Duty to Defend (ECF No. 20) and **GRANTS IN PART** and **DENIES IN PART** the City's Motion for summary Judgment (ECF No. 19).

**IT IS SO ORDERED.**


**8/26/2022**                             s/Edmund A. Sargus, Jr.
**DATE**                                    **EDMUND A. SARGUS, JR.**
                                               **UNITED STATES DISTRICT JUDGE**